The opinion of the Court was delivered by
Munro, J.
On the defendant’s first ground of appeal it may be sufficient to remark, that the ruling of the Circuit Judge, in permitting the re-survey plat, referred to, to be given in evidence, was in strict accordance with all our adjudications on that subject, commencing with Frean ads. Cruikskanks, (3 McCord, 84,) in which it was held, “ That the Act which au-thorises a survey in trespass to try title is not imperative, and was never designed to be used when unnecessary; but that either party may resort to it, when he has no other sufficient evidence, by which to identify the land —and as to the argument, of its operating as a surprise to the adverse party, drawn from a want of notice, it is a sufficient answer to it to say, 'that the adverse party has only to apply for a rule of survey himself under an order of Court, and the objection is at once obviated.
The only other question necessary to be considered, is that which arises under the fourth ground of appeal, namely, the right of the defendant, Sarah Keenan, to a distributive share of the real estate of her deceased husband, notwithstanding she was an alien at the time of his death. It appears, from the report of the Circuit Judge, that the intestate, Stephen Keenan, under whom both the plaintiffs and defendants claim title, was a native of Ireland ; that he immigrated to this country in the *350 early part of the present century ; that in the year 1838, he became a citizen of the United States, and that, being the owner of the land in dispute, he departed this life in the year 1847, intestate, leaving surviving him Sarah Keenan, his widow, and a brother, named Samuel Keenan, who was also a native of Ireland, but had been naturalized in the year 1832 ; that the said Samuel hath also recently departed this life, leaving the plaintiffs, who are his children, surviving him, and who claim to be the sole distributees of the real estate of the intestate, Stephen Keenan. It further appears, that the defendant, Sarah Keenan, is, likewise, a native of Ireland ; that she came to this country after she had arrived at full age ; that sometime between the years 1839 and 1841, she intermarried with the intestate, but at the time of his death was still an alien; that on the 3rd of November, 1847, she announced her intention to become a citizen of the United States, and her certificate of citizenship bears date 1st November, 1853.
Whilst it was conceded in the argument, that, although the defendant’s alienage at the time of her husband’s decease, incapacitated her from taking any portion of his real estate, it was however contended, that the removal of that disability, by hex-subsequent naturalization, in effect operated as a complete restoration of her right to take at that period.
This position, it will be seen, is neither sustained by principle, nor judicial adjudication, and for the very obvious reason, that if our naturalization laws were to have the retro-active effect, which is contended for, the inevitable consequence would be, not merely to vest a title in one claiming under them, but to divest a title out of another upon whom the law had already cast the inheritance. In Fish vs. Klein, (2 Merv. 431,) it was held, that an alien, who was a devisee in trust to sell, and who joined in the sale and conveyance, did not give a good title ; and his subsequent naturalization by Act of Parliament, did not operate to confirm the title.
In Vaux vs. Nesbit, (1 McC. Ch. 352,) it is said, “ The words of our statutes for naturalizing aliens are evidently prospective.” *351 And again, Chancellor DeSaussure remarks, “Naturalizationis not restrospective. I apprehend this would be too full of inconvenience. for many years might elapse, between the death of the ancestor, and the naturalization of the nearest relation.” “ Upon the whole,” the Chancellor says, “ I am satisfied that an alien, becoming a citizen in the most regular manner, does not acquire a right to inherit, or to take and hold land, which belonged to his ancestor, who died before he became a citizen, so as to divest the right of a remoter heir, who was a citizen at the time of the death of the ancestor.” In Wightman vs. Laborde, Escheator, (1 Spear, 525,) it is said, “ The effect of naturalization is to invest the alien with all the rights of natural born citizens, but it has no such retro-active operation as to make an alien capable of taking as heir of one who died before naturalization. He who takes as heir, must take at the instant the last owner died. There can be no abeyance. The succession is cast upon the next of kin who can take, passing by those nearest in blood, but who cannot take on account of alienage or other disability. The heir must be capable of taking at the death of the last owner. There can be no restoration of the right of succession by removing the disability.”
It was pressed with much earnestness, in the argument, that if the defendant’s case is not embraced by any of the Acts of Congress on the subject of naturalization, it, however, comes within the provisions of the Acts of our own Legislature, on that subject; and especially the Acts of 1807 and 1828.
In reference to the first-mentioned Act — that of 1807(a) apart from the judicial interpretation given to it, in the cases of Richards vs. McDaniel, (2 Mill, 18,) and Wightman vs. Laborde, already referred to, the title of the Act is of itself sufficient to show, that it has not the most remote application to the case under consideration. Its title is as follows: “ An Act to legalize titles to real property derived from or through aliens, and to enable aliens, under certain conditions therein mentioned, to *352 hold, convey, and devise real property.” The following is a summary of its provisions : It provides, that titles derived by contract, grant, or deeds of conveyance, from or through aliens, shall be legalized under certain provisions, one of which is, that the Act shall not affect descents already cast, — and authority is given to all persons holding, or who shall hold, real property in the State, under the said provisions, to convey or devise the land to their children, although born before the grantors or de-visors acquired titles, under the Act. Neither does the defendants’ case derive support from the Act of 1828(a) — its sole object being to protect from escheat, and at the same time to impart to an alien widow, the capacity to take by “will or descent,” the lands of a deceased husband, who happens to die, leaving no one capable of taking the same under the statute of distributions.
Upon the whole, we are entirely satisfied with the ruling of the Circuit Judge on this branch of the case, and however much we may regret its result, — for it is certainly one of extreme hardship — we have, been wholly unable to discover anything in the present condition of the law, to mitigate its rigor.
The motion is dismissed.
O’Neall, Wardlaw, Withers, and Whitner, JJ., concurred.
Glover, J., absent at the argument.

Motion dismissed.

(a) 5 Stat. 547.

(a) 6 Stat. 363.